UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHERYL IRENE MORAN,

    Plaintiff,

v.                                              Case No: 8:21-cv-1487-WFJ-JSS

ANDREW SAUL, COMMISSIONER
OF SOCIAL SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Cheryl Irene Moran seeks judicial review of the denial of her claims for a period of disability and disability insurance benefits. As the Administrative Law Judge's (ALJ) decision was based on substantial evidence and employed proper legal standards, the court recommends that the decision be affirmed.

## BACKGROUND

### A.  Procedural Background

Plaintiff filed an application for a period of disability and disability insurance benefits on March 25, 2019. (Tr. 12, 56, 71, 131, 192, 303.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 68, 87.) Plaintiff then requested an administrative hearing. (Tr. 111, 113, 116.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 29–54.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits. (Tr. 9–28.) Subsequently, Plaintiff

requested review from the Appeals Council, which the Appeals Council denied.  (Tr. 1–6.)  Plaintiff then timely filed a complaint with this court.  (Dkt. 1.)  The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

    **B.**    **Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1967, claimed disability beginning on January 25, 2019.  (Tr. 55–56, 70–71, 197, 210, 214.)  Plaintiff has a high school education and a certificate in computer education.  (Tr. 34, 66, 227.)  Plaintiff's past relevant work experience includes work as a customer service representative and school bus driver.  (Tr. 34–35, 48, 66, 84, 216, 228.)  Plaintiff alleged disability due to anxiety, depression, chronic back pain, chronic knee pain, chronic neck pain, chronic hip pain, fibromyalgia, rheumatoid arthritis, inflammatory arthritis, diabetes (type 2), neuropathy, obesity, asthma, chronic obstructive pulmonary disease (COPD), and eye problems.  (Tr. 56, 71, 90, 107, 189, 226.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since January 25, 2019, the alleged onset date.  (Tr. 14.)  After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: COPD; diabetes mellitus; peripheral neuropathy; osteoarthritis; cervical and lumbar spine degenerative disease; morbid obesity; coronary artery disease with history of myocardial infarctions; hypertension; bipolar disorder; major depressive disorder; and post-traumatic stress disorder (PTSD).  (Tr. 14.)  Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments

that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15.) The ALJ then concluded that Plaintiff retained a residual functional capacity (RFC) to

> perform light work as defined in 20 CFR 404.1567(b), except she can never climb ladders, ropes, or scaffolds. The claimant can no more than frequently perform the remaining postural functions, including climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. The claimant must avoid concentrated exposure to extreme cold and extreme heat, and must avoid even moderate exposure to irritants such as fumes, odors, dust, and gases. The claimant remains able to understand, remember, carry out, and perform just simple, routine tasks and instructions in jobs with a reasoning level of only 1 or 2, involving no more than occasional interaction with the public, supervisors, and co-workers, and involving no more than occasional changes in work setting.

(Tr. 16–17.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record. (Tr. 18.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert (VE), the ALJ determined that Plaintiff could not perform her past relevant work. (Tr. 20.) Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a router, checker, and marker. (Tr. 21, 51.) Accordingly, based on Plaintiff's age,

education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. (Tr. 21–22.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA), in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform

the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal

standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision and argues that the ALJ erred in failing "to properly consider multiple medical opinions on file and failed to reconcile his RFC assessment with those medical opinions." (Dkt. 15 at 3, 20.) Specifically, Plaintiff argues that the ALJ failed to properly evaluate the RFC opinions of Drs. Lapado Shyngle, Elliot Rotman, and Jermaine Robertson and include additional limitations in the assessed RFC. (*Id.* at 20–27.) Upon consideration and for the reasons that follow, the undersigned recommends that Plaintiff's contentions do not warrant reversal.

### A. Opinion of Dr. Lapado Shyngle

Plaintiff first argues that the ALJ improperly considered the opinion of the consultative medical examiner, Dr. Lapado Shyngle. (*Id.* at 20–25). Plaintiff contends that "[t]he ALJ's decision to punt on Dr. Shyngle's conclusions regarding Plaintiff's ability to bear weight while standing and walking undermines the whole decision." (*Id.* at 22.) The Commissioner argues in response that pursuant to the recently amended regulations, substantial evidence supports the ALJ's evaluation of Dr. Shyngle's opinion and the assessed RFC. (Dkt. 17 at 4–10.)

Prior to March 27, 2017, an ALJ was required to assign greater weight to the opinions of treating physicians. This rule, referred to as the "treating physician rule" required the ALJ to assign controlling weight to the opinion of a treating physician if

- 6 -

the opinion was well supported and not inconsistent with other evidence in the record. If an ALJ assigned less than controlling weight to a treating physician, the ALJ was required to provide good cause for doing so. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011).

However, the new SSA regulations, published on January 18, 2017 and effective on March 27, 2017, apply to this case and eliminate the treating physician rule. *See* 20 C.F.R. § 404.1520c. In revising the regulations to remove the treating source rule, the SSA explained that "under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision . . . these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).

"Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, No. 2:18-cv-2379-MGL-MGB, 2020 WL 376995, at *4, n.2 (D. S.C. Jan. 6, 2020) (citing 20 C.F.R. § 404.1520c(a), (c)(1)–(2)). While there are several factors the ALJ must consider, "[t]he most important factors" are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). "Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior

administrative finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

The new regulations also changed the articulation standards for ALJs in assessing medical source opinions. First, an ALJ need not assign evidentiary weight to the medical opinions in the record. *See* 20 C.F.R. § 404.1520c(a); *Tucker v. Saul*, No. 4:19-cv-759-RDP, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). Second, because controlling weight is no longer required, the ALJ no longer needs to "give good reason" for the weight given to the treating source's medical opinion. 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Third, while the ALJ must explain how he or she considered the supportability and consistency factors for a medical source opinion, the ALJ need not explain how it considered any other factors. 20 C.F.R. § 404.1520c(b)(2).

Moreover, it is strictly the ALJ's duty to determine the claimant's RFC. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877–78 (11th Cir. 2013). While opinion evidence is helpful, it is not dispositive. *Carson v. Comm'r of Soc. Sec.*

*Admin.*, 300 F. App'x 741, 743 (11th Cir. 2008); *see also Williams v. Comm'r, Soc. Sec. Admin.*, 580 F. App'x 732, 734 (11th Cir. 2014) (explaining that "the ALJ may reject the opinion of *any* physician when the evidence supports a contrary conclusion"). It is the ALJ's obligation to consider all the evidence of record and to determine the RFC. *See Spivey-Adams v. Acting Comm'r of Soc. Sec.*, No. 3:16-cv-1134-J-PDB, 2017 WL 4297246, at *12 (M.D. Fla. Sept. 28, 2017) (holding that the ALJ "fulfilled her duty under the regulations to assess [plaintiff's] RFC in light of all the evidence in the record").

Here, Dr. Shyngle completed a report on February 4, 2020 after Plaintiff was examined at Newsome Medical. (Tr. 752.) In the report, Dr. Shyngle noted that Plaintiff was independent with her personal care and performed light household chores. (*Id.*) Dr. Shyngle further noted, among other things, that Plaintiff had no difficulty getting in and out of her chair, moderate difficulty getting on and off exam table, no pain or discomfort while seated, moderate to marked right knee tenderness and crepitus, mild to moderate limp gait, severe difficulty in tandem, heel, and toe walk, unsteady hop, and severe difficulty in squatting. (Tr. 755.) He further explained that Plaintiff had "moderate to marked restrictions for prolonged weight bearing and other strenuous physical activities because of [degenerate joint disease] with chronic right knee pain, coupled with chronic low back pain and fibromyalgia." (Tr. 756.)

In evaluating Dr. Shyngle's conclusion, the ALJ stated:

> The undersigned considered consultative examiner Dr. Shyngle's conclusion that the claimant had moderate to marked restrictions for prolonged weight bearing and other

- 9 -

>strenuous physical activities. Dr. Shyngle did not define "moderate," "marked," "prolonged," or "strenuous" so did not specify what exactly his opinion was concerning what the claimant remains able to do physically. Subsequent x-rays confirmed just minimal degenerative changes in the claimant's right knee and the undersigned finds a restricted range of light work activity to be most consistent with the evidence of record as a whole.

(Tr. 19.)

The undersigned finds that the ALJ properly considered the opinion in accordance with the revised regulations, and articulated his consideration of the important factors, by identifying his reasons for discounting them and explaining the supportability and consistency of the evidence. (Tr. 19.) For example, the ALJ explained that Dr. Shyngle examined Plaintiff and found that Plaintiff had moderate to marked restrictions for prolonged weight bearing and other strenuous physical activities. (Tr. 755–57.) However, the ALJ determined that the opinion lacked support in Dr. Shyngle's own treatment record as he "did not specify what exactly his opinion was concerning what the claimant remains able to do." (Tr. 19.) Moreover, the ALJ determined that the opinion was inconsistent with the record evidence, noting that x-rays taken approximately three weeks after Dr. Shyngle's examination showed "minimal degenerative changes in claimant's right knee." (Tr. 19, 760.) As such, the undersigned recommends that the ALJ properly assessed Dr. Shyngle's opinions under the new regulations.

Furthermore, the undersigned recommends that the ALJ's determination is supported by substantial evidence in the record. For example, Dr. Shyngle's treatment

notes further reflect that Plaintiff had no difficulty getting in and out of her chair and was able to walk, although with a limp, without an assistive device. (Tr. 755.) Moreover, Plaintiff's medical providers consistently reported that she had full range of motion in her joints and no joint abnormalities or pain. (Tr. 324, 326, 375, 395, 406, 472, 494, 508, 579, 704, 706, 830, 912, 947, 1062, 1242.) As such, the undersigned recommends that substantial evidence supports the ALJ's finding.

Last, to the extent Plaintiff contends that it was error for the ALJ to not include Dr. Shyngle's conclusions in Plaintiff's RFC, this contention misconstrues the ALJ's role. As noted above, the task of determining the RFC and Plaintiff's ability to work is the duty of the ALJ alone, not the doctors. *See Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010); *see also Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Rodriguez v. Comm'r of Soc. Sec.*, No. 6:18-cv-503-Orl-18TBS, 2018 WL 7113871, at *2 (M.D. Fla. Dec. 27, 2018), *report and recommendation adopted*, No. 6:18-cv-503-Orl-18TBS, 2019 WL 316051 (M.D. Fla. Jan. 24, 2019) ("[T]here is no requirement that an ALJ base an RFC finding on a medical source's opinion."). As discussed above, the ALJ did not find Dr. Shyngle's conclusion that Plaintiff had moderate to marked restrictions for prolonged weight bearing and other strenuous physical activities supported by and consistent with the evidence of record. Thus, the court finds that the ALJ fulfilled his duty to assess the RFC in light of all the evidence in the record.

### B. Opinions of Elliot Rotman, Ph.D. and Jermaine Robertson, Ph.D.

Plaintiff next argues that the ALJ improperly considered the opinions of the state agency consultants, Drs. Elliot Rotman and Jermaine Robertson, when formulating the RFC. (Dkt. 15 at 25–28.)  Specifically, Plaintiff contends that "the ALJ omitted any reference to social demands or social expectations from his RFC assessment or his questioning of the vocational expert at hearing." (*Id.* at 26.)  The Commissioner argues in response that Drs. Rotman and Robertson did not impose greater limitations than the ALJ in the RFC and furthermore, substantial evidence supports the ALJ's consideration of the prior administrative findings regarding Plaintiff's mental limitations. (Dkt. 17 at 11–13.)

Dr. Rotman and Dr. Robertson each independently reviewed the record and offered opinions that Plaintiff had certain mental limitations.  Specifically, each doctor found, among other things, that Plaintiff could understand and remember 3–4 step tasks, would be moderately limited in working in coordination with or in proximity to others without being distracted by them, and that "mood would episodically affect [concentration, persistence or pace].  May find others distracting and would do best with low social expectations." (Tr. 64, 82–83.)  Moreover, in addressing Plaintiff's social interaction limitations, each doctor opined that Plaintiff was moderately limited in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavior extremes.  Both doctors further explained that Plaintiff "[c]an be irritable and would functioning (sic) best in doing

non-collaborative work tasks with few social demands." (Tr. 65, 83.) Notwithstanding these findings, Dr. Robertson further explained that Plaintiff "can understand, retain, and carry out simple instructions. [Plaintiff] can consistently and usefully perform routine tasks on a sustained basis, with normal supervision, and can cooperate effectively with public and co-workers in completing simple tasks and transactions. [Plaintiff] can adjust to the mental demands of most new task settings." (Tr. 84.)

The ALJ found both Drs. Rotman and Robertson's findings persuasive. (Tr. 19.) Insofar as Plaintiff contends the ALJ did not consider each of the opinions noted above, the undersigned finds that the assessed RFC reflects the limitations found by these doctors. The ALJ limited Plaintiff to "simple, routine tasks and instructions in jobs with a reasoning level of only 1 or 2, involving no more than occasional interaction with the public, supervisors, and co-workers, and involving no more than occasional changes in work setting." (Tr. 16–17.) The ALJ thus accounted for the limitations assessed by Drs. Rotman and Robertson.

Plaintiff suggests that the ALJ should have specifically discussed and evaluated additional findings of Drs. Rotman and Robertson. For example, Plaintiff asserts that "the ALJ omitted any reference to social demands or social expectations from his RFC assessment." (Dkt. 15 at 26.) However, the Eleventh Circuit does not require this level of specificity. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) ("So long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite

- 13 -

every piece of evidence in the record."); *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) (noting that an ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record"); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision."); *cf. Robinson*, 365 F. App'x at 999 (stating that "the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors").

Moreover, substantial evidence supports the ALJ's consideration of Drs. Rotman and Robertson's opinions. In his determination that their opinions were persuasive, the ALJ noted that Drs. Rotman and Robertson's findings were supported by "claimant's allegations, treatment records, diagnostic imaging, and Dr. Shyngle's report." (Tr. 20.) The ALJ further discussed, in accordance with the new regulations, that Drs. Rotman and Robertson's findings were consistent with the "evidence of record as a whole," which confirmed that although Plaintiff has a history of mental health issues, "she remains somewhat stable." (Tr. 20.) The ALJ further noted that Drs. Rotman and Robertson's findings were consistent with that of the consultative examiner, Dr. Victoria A. Eyler. (Tr. 20.) Indeed, Dr. Eyler found that Plaintiff could experience moderate interference in areas including maintaining regular attendance, completing a normal workweek, handling interpersonal conflict, maintaining socially appropriate behavior, responding appropriately to changes in the work setting, coping with typical stressors in a typical work environment, and responding appropriately to hazards. (Tr. 612.) As such, the undersigned finds that substantial evidence supports

the ALJ's consideration of Drs. Rotman and Robertson's opinions. Thus, the court finds that the ALJ considered Plaintiff's medical conditions as a whole when assessing the RFC. Plaintiff's contention that the RFC should have included more limitations is therefore without merit.

Finally, to the extent Plaintiff identifies other evidence in the record that she believes bolsters the opinions of Drs. Shyngle, Rotman, and Robertson, the undersigned declines to reweigh the evidence and substitute its judgment for that of the ALJ. *Bloodsworth*, 703 F.2d at 1239 ("We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]."); *see Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) ("Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.") (punctuation and citation omitted); *Miles*, 84 F.3d at 1400 ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."). Accordingly, the undersigned recommends that the ALJ applied the proper legal standards in considering the opinions of Drs. Shyngle, Rotman, and Robertson and that the ALJ's evaluation of their opinions is supported by substantial evidence.

### C. VE Hypothetical

Lastly, Plaintiff also asserts that the ALJ erred by omitting any reference to social demands or social expectations in his questioning of the VE. (Dkt. 15 at 26.)

Plaintiff does not explain or develop this argument in her brief. Notwithstanding, the undersigned will address this contention.

In determining an individual's RFC and posing a hypothetical to the VE, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Soc. Sec. Admin., *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8P, at *5 (July 2, 1996), *available at* 1996 WL 374184; *see Testoni v. Saul*, No. 3:18-cv-842-J-JRK, 2019 WL 3812487, at *4 (M.D. Fla. Aug. 14, 2019) (citing *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990)). The hypothetical question posed to the VE must account for all of the claimant's impairments to constitute substantial evidence. *Wilson*, 284 F.3d at 1227. "[Q]uestions that 'implicitly account[] for the claimant's limitations' are sufficient to meet this requirement." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1269 (11th Cir. 2015) (quoting *Winschel*, 631 F.3d at 1180–81). However, the hypothetical question does not need to include limitations or impairments properly rejected by the ALJ. *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 742 (11th Cir. 2008); *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (citing *Wilson*, 284 F.3d at 1227).

Here, Plaintiff's assertions regarding the questions posed to the VE is a restatement of her prior arguments. Therefore, the "success of this argument is contingent on the success of [Plaintiff's] first assignment of error." *Raponi v. Comm'r of Soc. Sec.*, No. 6:19-cv-1206-ORL-18LRH, 2020 WL 3086215, at *4 (M.D. Fla. May

18, 2020), *report and recommendation adopted,* No. 6:19-cv-1206-ORL-18LRH, 2020 WL 3074116 (M.D. Fla. June 10, 2020).  Plaintiff does not argue that the hypothetical failed to account for all the limitations found in the RFC.  Rather, she contends the RFC was incomplete, as discussed above.  Because the undersigned finds that the RFC is supported by substantial evidence, the ALJ did not err in relying on the VE's testimony in response to his questions and the hypothetical which was consistent with the ALJ's RFC determination.  *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 542–43 (11th Cir. 2016) ("Here, [plaintiff] does not dispute that the hypothetical question took into account all the limitations found in the RFC. Consequently, [plaintiff's] contention fails because the criticisms that he aims at the hypothetical question are identical to those leveled at the ALJ's RFC, and, as discussed above, the RFC is supported by substantial evidence."); *Franz v. Comm'r of Soc. Sec.*, No. 6:19-cv-1048-ORL-LRH, 2020 WL 4057565, at *7 (M.D. Fla. July 20, 2020) ("I find that Claimant has failed to establish that the ALJ erred regarding the RFC determination. Consequently, 'the ALJ's hypothetical question to the VE, which is consistent with the ALJ's RFC determination, properly accounted for Claimant's functional limitations.'") (quoting *Straka-Acton v. Comm'r of Soc. Sec.*, No. 6:14-cv-630-ORL-GJK, 2015 WL 5734936, at *4 (M.D. Fla. Sept. 29, 2015)).

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**RECOMMENDED**:

1. The decision of the Commissioner be **AFFIRMED**.

2. The Clerk of Court be directed to enter final judgment in favor of the Commissioner and close the case.

**IT IS SO REPORTED** in Tampa, Florida, on June 29, 2022.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has 14 days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:
The Honorable William F. Jung
Counsel of Record